## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### The Defendant and Related Individuals and Entities

1. From in or around November 2014 through in or around August 2016, the Defendant Yair Hadar worked on behalf of an Israel-based business named Yukom Communication ("Yukom") that provided sales and marketing services, including "retention services," for internet-based businesses with the brand names BinaryBook and BigOption.

2. BinaryBook and BigOption representatives sold and marketed financial instruments known as "binary options" to customers located throughout the world, including in the United States and within the District of Maryland.

3. Lee Elbaz used the alias "Lena Green" when interacting with investors. The owners and operators of Yukom installed Elbaz as CEO, and Elbaz, along with other managers working on behalf of BinaryBook and BigOption, supervised representatives of BinaryBook and BigOption at Yukom and elsewhere who performed retention services on behalf of BinaryBook and BigOption.

### Background on Binary Options and Related Definitions

4. A "binary option" was a type of option contract in which the payout depended on the outcome of a discrete event, typically related to whether the price of a particular asset—such as a stock or a commodity—would rise above or fall below a specified amount. Unlike standard options, investors in binary options were not being given the opportunity to actually purchase a stock or a commodity but, rather, were effectively predicting whether its price would be above or below a certain amount at a certain time of the day. The option holder was typically promised that when the binary option expired, the option holder will receive either a pre-determined amount of cash or nothing.

5. A "conversion" representative was a salesperson responsible for converting a prospective binary options customer into an investor and obtaining an initial deposit of funds.

6. A "retention" representative was responsible for working with the investor going forward with the goal of obtaining additional deposits. As part of this effort, the Defendant and other retention representatives were responsible for educating clients on how to use the BinaryBook and BigOption platforms.

7. A "bonus" was an amount of purported funds that representatives of BinaryBook and BigOption could contribute to an investor's account to be used in trading.

8.     A "risk free trade" or "insured trade" was a trade offered by representatives to investors in which the investors' accounts would be reimbursed by "bonus" funds in the event of a losing trade.

### The Defendant's Participation in the Conspiracy and Fraudulent Scheme

9.     The Defendant and other representatives of BinaryBook and BigOption, under the training and direction of Lee Elbaz and other managers and supervisors at BinaryBook and BigOption, agreed to induce BinaryBook and BigOption investors to deposit funds based on material misrepresentations, including:

   i.    false statements and material omissions regarding the alignment of financial incentives between investors and representatives—*i.e.*, claiming to represent the interests of investors when, in fact, they were not representing the interests of investors;

   ii.   false statements and material omissions regarding the suitability of binary options as investments and returns on investments in binary options;

   iii.  false statements and material omissions about the names, qualifications, and physical location of representatives assisting investors;

   iv.   false statements and material omissions regarding investors' ability to withdraw investment funds and about the reasons that funds could not be withdrawn; and

   v.    false statements and material omissions regarding—and the deceptive use of—so-called "bonuses," "risk free trades," and "insured trades."

10.    BinaryBook and BigOption representatives communicated with investors through the internet and communicated with clients by email and telephone.

11.    BinaryBook and BigOption representatives were not representing the interests of investors: When investors lost money, the owners of BinaryBook and BigOption profited.

12.    The Defendant's commissions were based on how much money his clients deposited.

13.    BinaryBook and BigOption representatives falsely referred to themselves as "analysts," "brokers," and "traders" to potential investors, when in fact they were sales representatives. In correspondence and other communications, the Defendant identified himself as an "Account Manager" and "Senior Analyst." The Defendant did not have a background in finance, business, or the financial markets.

14.    The Defendant used an alias—referred to internally as a "stage name"—while working on behalf of BigOption. The Defendant used that stage name—"Steven Gold"—to interact with client investors, and he also falsely presented his location and professional

qualifications to client investors. Such stage names were approved by senior managers within Yukom, including Elbaz.

15. For example, on or about December 11, 2014, the Defendant, on behalf of BigOption, sent an email to a client investor using the alias "Steven Gold." Among other things, the email contained the following statements:

> Following our previous phone conversation, I am writing you this email to give you a summary of what we discussed…you will be receiving an [sic] 100% bonus on your investment including secured trades under the protected trade category within Big Option's insurance plan. The average profit you should be expecting will be around 20-35% on a monthly basis. This means that the estimated amount of returns will be around 5-7k monthly.

The statements regarding the "average profit" that the investor "should be expecting" and the "estimated amount of returns" were false, and the Defendant knew that they were false at the time that he made them. Among other things, the vast majority of investors with BigOption lost money over time.

16. In an email on or about December 18, 2014 email, "Gold" sent an email to the same investor that stated, "As you know, my only incentive is to maintain you as a long-term client and to have you expand my portfolio to as much as you can." The email did not disclose that the Defendant was not, in fact, representing the interests of investor and that both BigOption and the Defendant profited when investors lost money.

17. The Defendant had direct contact with investors and induced clients to invest in binary options by falsely representing the return on investment and using "bonuses" to convince clients to continue to deposit funds. The Defendant also attempted to prevent investors from withdrawing funds from their accounts.

18. In furtherance of the conspiracy, representatives of BinaryBook and BigOption—the Defendant's co-conspirators—directly communicated with investors within the District of Maryland.

19. In furtherance of the conspiracy, the Defendant was responsible for approximately $1.2 million in investor losses based on his direct interactions with investors as a sales representative.

SO STIPULATED:

_____
Ankush Khardori, Trial Attorney
Tracee Plowell, Assistant Chief

_____
Yair Hadar
Defendant

_____
Roy L. Austin, Esq.
Counsel for Defendant

12